UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT KING, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:17-cv-1741 (MPS) |
| | : | |
| GATES, et al., | : | |
|     Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The pro se plaintiff, Robert King, commenced this civil rights action asserting claims for use of excessive force in violation of the Eighth Amendment. The named defendants, Captain Lewis, Lieutenant Rangel, and Correctional Officers Gates, Reynoso, Noyce, Simmons, Lukasiewski, and Russo, move for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before commencing this action. The motion was filed on February 28, 2019. On March 20, 2019, the plaintiff filed a motion for extension of time to respond to the motion for summary judgment. The Court granted the motion and directed the plaintiff to file his response on or before May 20, 2019. ECF No. 52. That date has passed without a response or request for additional time to respond. For the reasons that follow, the defendants' motion is granted.

I.    <u>Standard of Review</u>

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). When reviewing the evidence in the summary judgment record, the Court must draw all reasonable inferences in favor of the non-moving party.

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

II.  Facts[1]

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement and attached exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2

The defendants recount the following allegations from the Amended Complaint. On April 5, 2017, the plaintiff was incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan"). ECF No. 50-7, ¶ 1. On that day, he was being strip-searched by all defendants. *Id.*, ¶ 2. Defendant Rangel was in charge of the search and annotated a hand-held video tape. *Id.*, ¶ 3.

Defendant Lukasiewski instructed the plaintiff to remove his shoes and slide them back. The plaintiff complied with the order. *Id.*, ¶ 4. He then told the plaintiff to turn around and pick up the shoes. The plaintiff complied with the order. *Id.*, ¶ 5. When he turned around, however, defendant Lukasiewski screamed at the plaintiff to turn back and face the wall. *Id.*, ¶ 6.

The plaintiff alleges that defendants Lukasiewski, Gates, and Reynoso slammed him into the wall and tripped him, causing him to fall to the ground. *Id.*, ¶ 7. Defendant Lewis sprayed the plaintiff with a chemical agent when he was against the wall. *Id.*, ¶ 8. Defendant Rangel sprayed him with a chemical agent when he was on the ground. *Id.*, ¶ 9. The plaintiff also believes that defendants Gates, Lukasiewski, Noyce, Reynoso, Russo, and Simmons punched and kicked him when he was on the ground. *Id.*, ¶ 10.

An unidentified defendant yelled for the plaintiff to stop resisting while the other

---

Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3. Although the defendants informed the pro se plaintiff of this requirement in the manner required by the Local Rule, ECF No. 50-8; D. Conn. L. Civ. R. 56(b), and the Court granted an extension of time for him to respond, the plaintiff has not submitted any opposition papers. Accordingly, the defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2."). As the Amended Complaint is verified, the Court may consider the allegations in reviewing the motion for summary judgment. Because the Amended Complaint contains no reference to exhaustion of administrative remedies, however, it does not assist the plaintiff in raising a genuine dispute of material fact.

defendants were striking him. *Id.*, ¶ 11. The plaintiff screamed that he was not resisting and screamed in pain at least twice. *Id.*, ¶¶ 12-13. The plaintiff was decontaminated in the shower and brought to the medical unit. *Id.*, ¶ 14. He suffered a cut above his right eye, which caused a scar, a dent on the right side of his skull, and multiple contusions. *Id.*, ¶ 15. He suffers severe headaches and other unspecified health issues from the injuries, and twice has been brought to the Emergency Room by ambulance. *Id.*, ¶ 16.

Michelle King serves as the Administrative Remedies Coordinator at Corrigan. *Id.*, ¶ 19. In that position, she keeps records of all inmate grievances filed at that facility and maintains the Grievance Log. *Id.*, ¶ 20. The administrative remedy procedures are set forth in Department of Correction Administrative Directive 9.6. *Id.*, ¶ 21. An inmate must first try to resolve his complaint informally, both verbally and in writing, before filing a grievance. The grievance must be filed within thirty days from the date of the incident. *Id.*, ¶¶ 22-24.

The plaintiff was housed at Corrigan from January 24, 2017, through May 2, 2017. *Id.*, ¶ 25. Ms. King has reviewed the Grievance Log to locate any grievances filed by the plaintiff between April 5, 2017, and May 5, 2017, the thirty-day period during which the plaintiff was required to file a grievance regarding this incident. *Id.*, ¶ 27.

The plaintiff filed one grievance during the period. *Id.*, ¶ 28. The grievance complained that correctional staff gave him the address to write to the State Police instead of allowing him to call the State Police, as he requested. *Id.*, ¶ 31; *see* ECF No. 50-5 at 7.

III. Discussion

The defendants move for summary judgment the ground that the plaintiff failed to exhaust his administrative remedies before commencing this action.

4

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Administrative Remedies (effective August 15, 2013) and may be found at: http://www.portal.ct.gov/doc. The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a

5

prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in Sections 4(B) through 4(I) of Administrative Directive 9.6, the applicable remedy is the Inmate Grievance Procedure. The grievance procedures apply to the plaintiff's claims for use of excessive force. The exceptions listed in the directive all deal with appeals of decisions for which there are other administrative remedy procedures in place.

Under Administrative Directive 9.6(6), an inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form, CN 9601, the Inmate Request Form, and send that form to the appropriate staff member. *See id.* "The inmate must clearly state the problem and the action requested to remedy the issue." *Id.* If all attempts to resolve the matter informally are unsuccessful, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G) & (I). The Level 2 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator should respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. *See id.*

The plaintiff's claims relating to the April 5, 2017 incident are subject to the standard administrative remedy procedures. The defendants have submitted the declaration of the Administrative Remedies Coordinator King, who states that she reviewed all grievances filed by the plaintiff in the Grievance Log for the period from April 5, 2017, through May 5, 2017. She located one grievance. The defendants have submitted a copy of the grievance in support of their motion.

In the written attempt at informal resolution, the plaintiff states—in the portion of the form entitled "Request"—that he was injured during the April 5, 2017 incident and "I would like to get in touch with state police." The response tells the plaintiff he can write to the state police at the address previously provided to him. ECF No. 50-5 at 5. The grievance form includes a section that asks the inmate to state the problem and requested resolution with the following instructions: "Provide any factual information that is applicable, including any responses from staff. *State the action that you think should be taken to resolve the problem.*" EC No. 50-5 at 7 (emphasis added). In this portion of the form, the plaintiff wrote:

7

> On April 5, 2017 at approximately 11 am at the Radgowski C.C. AP Room cell #2 I was being stripped search. The officer had instructed me to take off my shoes and slide them back, which I complied. The officer then instructed me to turn around and pick them up, which I complied. The officer then told me to turn back and face the wall, which I complied and was doing. While I was facing the wall officers on both sides of me, grabbed each of my arms and proceeded to trip me to the floor, while another officer ma[c]e the back of my head. Which I stated was is all this for, while being tripped to the floor. Once I was on the floor I was then punched, kicked and stomped while balled up in the fetal position. At which point I started to scream from the beating I was getting. Once officers stopped hitting me and I was able to put my hands behind my back and get handcuffed. That's when they picked me up off the floor and an open cut was over my right eye. (Which medical treated me for at Corrigan C.C.) On 4-6-17 I asked counselor of RHU and Unit Manager Congar to call state police for this matter, which they did not let me call state police. On 4-19-17 Unit Manager Congar allowed me to shave my head and, that's when I realized that I have a dent in my skull from that incident. The s[w]elling went down some. I then asked unit manager Congar, counselor of RHU and warden to call state police. They didn't let me call. The counselor did give me the address to them. Which I did write to them. Also! I would do add that I wrote to medical to be seen about this matter and haven't yet been seen. I think that I should be allowed to press charges against these officers.

*Id.* at 7. The grievance was denied. The reviewer determined that proper protocol was followed for contacting the Connecticut State Police: "The counselor was correct to have you write CSP." *Id.*

The plaintiff appealed the denial to level 2. The plaintiff explained that he appealed the denial because "sending an address in a moment of an emergency is not proper protocol for C.S.P. . . . . [staff] are not [allowed] to refuse a phone call [whether] it be (Legal, CSP, or PREA)." *Id.* at 8. The appeal was denied. *Id.*

Although the plaintiff described the use of excessive force in his grievance, his requested resolution was to be able to speak with the state police rather than write to them. Both the inmate request form and the grievance appeal made clear that the issue of contention was that correctional officials provided him an address to write to the state police rather than arranging a

8

telephone call. This was the only "request" and "action that you think should be taken" that he specified in these forms. ECF No. 50-5 at 5, 7. The persons identified in the grievance, the counselor and unit manager, are not named as defendants in this action and were not involved in the alleged excessive use of force. Rather, they were the ones who failed to accommodate his request to call the state police. No officer involved in the alleged use of excessive force, i.e., no defendant, is mentioned in the grievance.[2]

On appeal, the plaintiff did not challenge the fact that correctional officials considered the only issue to be his inability to call the state police. To the contrary, his level 2 appeal stated that "I send this appeal on the gronuds that sending an address in a moment of emergency is not proper protocol for C.S.P. or P.R.E.A. . . . ." ECF No. 50-5 at 8. Thus, although the sentence in the grievance itself stating that "I think that I should be allowed to press charges against these officers" might, taken in isolation, suggest that he was challenging the use of force, when read as a whole, this grievance did not alert correctional officials about a separate claim regarding the use of force. Instead, in context, the quoted sentence is reasonably understood to be part and parcel of the plaintiff's request to telephone the state police "to press charges against these

---

[2] I do not rely on the failure to name the defendants in the grievance itself as a basis for my conclusion that the plaintiff failed to exhaust. *See Espinal v. Goord*, 558 F.3d 119, 124, 127 (2d Cir. 2009) ("The [PLRA] exhaustion inquiry thus requires that we look at the state prison procedure and the prisoner's grievance to determine whether the prisoner has complied with those procedures . . . . Where New York's grievance procedures do not require prisoners to identify the individuals responsible for alleged misconduct, neither does the PLRA for exhaustion purposes.") Rather, I rely on the non-identification of the defendants, and the identification of the correctional officers who refused to accommodate the plaintiff's request to telephone the police, as further evidence that the only "clear[] state[ment of] the problem and the action requested to remedy the issue," Admin. Directive 9.6(6)(A), set forth in the inmate request form and ensuing grievance was a statement that the plaintiff had been wronged by the denial of his request to telephone the state police.

9

officers," rather than a request that the DOC itself investigate the use of force. Read in their entirety, the plaintiff's grievance papers thus cannot serve to exhaust the plaintiff's administrative remedies on his claim against the defendants for use of excessive force. *See Woodford*, 548 U.S. at 90 ("Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims."); *accord Moreau v. Peterson*, 672 F. App'x 119, 120 (2d Cir. 2017) (affirming dismissal of unexhausted claims where inmate exhausted some, but not all, claims set forth in liberal reading of complaint).

The Amended Complaint, drafted by an attorney with Inmates' Legal Aid Program, ECF No. 19 at 6, does not include a claim for denial of a phone call to the state police. The only claim asserted is a claim for use of excessive force. As the plaintiff has presented no evidence in opposition to the motion for summary judgment showing that he exhausted his administrative remedies regarding the excessive force claim, the defendants' motion for summary judgment is granted.

IV. Conclusion

The defendants' motion for summary judgment **[ECF No. 50]** is **GRANTED.** The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 12th day of June 2019 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge